Bonnie E. MacNaughton (CA State Bar No. 107402)
Grant M. Damon-Feng (CA State Bar No. 319451)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Telephone:     (206) 622-3150
Facsimile:     (206) 757-7700
Email:         bonniemacnaughton@dwt.com
               grantdamonfeng@dwt.com

John D. Freed (CA State Bar No. 261518)
Megan C. Amaris (CA State Bar No. 336283)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone:     (415) 276-6500
Facsimile:     (415) 276-6599
Email:         jakefreed@dwt.com
               meganamaris@dwt.com

Attorneys for Plaintiff
META PLATFORMS, INC.

**IN THE UNITED STATES DISTRICT COURT**
**THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| META PLATFORMS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>EKREM ATEŞ, individually and d/b/a "MyStalk,"<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Meta Platforms, Inc. ("Meta") alleges the following:

## INTRODUCTION

1. Beginning no later than July 2017 and continuing until present, Defendant Ekrem Ateş used unauthorized automation software to improperly access and collect—or "scrape"—the profiles of Instagram users, including their posts, photos, Stories, and profile information. Defendant's automation software used thousands of automated Instagram accounts that falsely identified themselves as legitimate Instagram users connected to either the official Instagram mobile application or website. Through this fraudulent connection, Defendant scraped data from the profiles of over 350,000 Instagram users. These profiles had not been set to private by the users and, beyond a limited number of profiles and posts, were publicly viewable only to logged-in Instagram users. Defendant published the scraped data on his own websites, which allowed visitors to view and search for Instagram profiles, displayed user data scraped from Instagram, and promoted "stalking people" without their noticing. Defendant also generated revenue by displaying ads on these websites.

2. Defendant's conduct was not authorized by Meta. Since February 2021, Meta has taken enforcement actions against Defendant, including disabling accounts, sending a cease and desist letter, and revoking Defendant's access to Meta's services. Meta brings this action to stop Defendant's violations of Instagram's Terms of Use and the Meta Commercial Terms. Meta also brings this action for damages and disgorgement for breach of contract and unjust enrichment.

## PARTIES

3. Plaintiff Meta is a Delaware corporation with its principal place of business in Menlo Park, San Mateo County, California.

4. Defendant Ekrem Ateş resides in Istanbul, Turkey. According to LinkedIn, Defendant studied computer systems technology and is a product designer at Amaris Consulting in Istanbul, Turkey. Exhibit 1.

1

**COMPLAINT**
Case No.

5. On or about January 30, 2017, Defendant registered and caused to be registered the domain mystalk.com where, beginning no later than July 2017, he displayed data scraped from Instagram. On or about June 23, 2019, Defendant registered the domain mystalk.net where, beginning no later than July 2019, he displayed data scraped from Instagram. Exhibit 2. Since at least July 2019, Defendant's domain mystalk.com redirected to mystalk.net (together, "MyStalk").

6. On or about March 24, 2019, Defendant registered and caused to be registered the domain stalkhub.com ("StalkHub") where, beginning no later than August 2019, he displayed data scraped from Instagram.

## JURISDICTION AND VENUE

7. The Court has jurisdiction under 28 U.S.C. § 1332 over the causes of action alleged in this Complaint because complete diversity exists and the amount in controversy exceeds $75,000.

8. The Court has personal jurisdiction over Defendant because Defendant used and controlled at least one Instagram account and thereby agreed to Instagram's Terms of Use, which contain a forum selection clause that requires Defendant to submit to the personal jurisdiction of the U.S. District Court for the Northern District of California, or a state court located in San Mateo County, for litigating this matter. Defendant also managed multiple Facebook Pages and thereby agreed to the Meta Commercial Terms, which contain a forum selection clause that requires Defendant to submit to the personal jurisdiction of the U.S. District Court for the Northern District of California, or a state court located in San Mateo County, for litigating this matter.

9. In addition, the Court has personal jurisdiction over Defendant because Defendant knowingly directed and targeted his conduct at Meta—which has its principal place of business in California—and at Meta's Instagram users located in California, having purposefully scraped the Instagram profiles of over 15,000 users located in California between January 15–17, 2022, and of over 21,000 users located in California between February 21–23, 2022. Defendant's websites

depended on accessing and scraping Instagram. Defendant has also transacted business and engaged in commerce in California by, among other things, using the services of California-based Cloudflare, Inc. to support MyStalk and StalkHub, and generating revenue from those sites by running ads using an ad publishing service hosted by Google LLC, which is headquartered in Mountain View, California. Meta's claims arise directly from and relate to these California contacts.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as the threatened and actual harm to Meta occurred in this District.

11. Pursuant to Civil L.R. 3-2(c), this case may be assigned to either the San Francisco or Oakland division because Meta is located in San Mateo County.

## FACTUAL ALLEGATIONS

### A. Background on Meta Products

12. Meta operates Facebook, a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices.

13. Meta also operates Instagram, a photo and video sharing service, website, and mobile application. Instagram users can post photos and videos to their profile. They can also view, comment on, and like posts shared by others on Instagram. The Instagram service is a Meta product.

14. When an Instagram user posts a photo, other Instagram users can view the photo and choose to "like" or "comment" on it. For Instagram accounts that are set to "public," logged-out visitors to Instagram can see limited information for a limited number of profiles before being redirected to an Instagram login page. On Instagram, users may also set their accounts and posts to "private," limiting access to that content to only approved followers. Users can change their privacy settings at any time.

3

**COMPLAINT**
Case No.

15. Instagram users can also tag their photos with hashtags—words or phrases preceded by a number or hash sign (#)—that indicate the post is about a specific topic. Other users can then search for hashtags to find content related to various topics.

16. Instagram also enables users to post Stories—photos or videos that can include audio and augmented reality effects. Stories are visible to other users for only 24 hours after they are posted, unless the user specifically makes them available for longer by adding them as a Story Highlight. Only users who have logged in to Instagram can view Stories and, for up to 48 hours after a Story is posted, the user who posts a Story can see a list of every user who has viewed their Story.

**B.     Instagram's Terms of Use and Meta's Commercial Terms**

17. Everyone who creates or uses an Instagram account agrees to Instagram's Terms of Use ("Instagram's Terms") (*available at* https://www.instagram.com/about/legal/terms/) and other rules that govern access to and use of Instagram. Because Instagram is a Meta product, Instagram's Terms constitute an agreement between the Instagram user and Meta. *Id.*

18. Since at least April 2018, Instagram's Terms prohibit users from (a) "do[ing] anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose"; (b) "creating accounts or collecting information in an automated way without [] express authorization"; and (c) using Instagram if Meta "previously disabled your account for violation of law or any of [Instagram's] policies."

19. The Meta Commercial Terms ("Meta's Commercial Terms") (*available at* https://www.facebook.com/legal/commercial_terms) apply to access and use of Meta Products, including Facebook and Instagram, for any business or commercial purpose. Business and commercial purposes include, but are not limited to, managing a Facebook Page for business purposes.

4

**COMPLAINT**
Case No.

**C.     Defendant Agreed to Instagram's Terms and Meta's Commercial Terms**

20.     At all relevant times, Defendant was bound by Instagram's Terms and Meta's Commercial Terms.

21.     Between December 28, 2012, and July 5, 2022, Defendant created and controlled at least five Instagram accounts:

   a.     Defendant created an Instagram account on December 28, 2012, with the username "atesekrem."

   b.     Defendant created an Instagram account on May 18, 2017, with the username "mystalkcom," which had a Bio stating: "Mystalk is an Instagram Web Viewer that you can easily browse posts, stories, users, hashtags, popular contents and much more."

   c.     Defendant created an Instagram account on May 13, 2018, with the username "mystalkdelete."

   d.     Defendant created an Instagram account on May 19, 2019, with the username "stalkhub," which had a Bio stating: "Explore and stalk Instagram profiles and stories with the best Instagram Web Viewer.  Discover the most popular Instagram photos and videos."

   e.     Defendant created an Instagram account on February 27, 2021, with the username "therealekremates."

22.     In addition to these Instagram accounts, beginning no later than February 26, 2021, Defendant used over 20,000 other Instagram accounts to scrape data from Instagram, including using over 10,000 Instagram accounts to scrape data from Instagram between January 15–17, 2022, and between February 21–23, 2022.

23.     Between August 8, 2008, and July 5, 2022, Defendant created and controlled at least two Facebook accounts:

   a.     Defendant created a Facebook account on August 8, 2008, with the username "Ekrem Ateş."

5
**COMPLAINT**
Case No.

b. Defendant created a Facebook account on February 26, 2014, with the username "Ekrem Ateş."

24. On May 18, 2017, Defendant created a Facebook Page named "Mystalk" and controlled the page until Meta disabled it on February 24, 2021. Defendant's Facebook account "Ekrem Ateş" was the owner and administrator of the Mystalk Facebook Page, where Defendant advertised his website, providing the URL mystalk.com and the following description: "Mystalk is an Instagram Web Viewer that you can easily browse posts, stories, users, hashtags, popular contents and much more."

25. On May 19, 2019, Defendant created a Facebook Page named "Stalkhub" and controlled the page until Meta disabled it on February 24, 2021. Defendant's Facebook account "Ekrem Ateş" was the owner and an administrator of the Stalkhub Facebook Page, where Defendant advertised his website, providing the URL stalkhub.com and the following description: "Explore and stalk Instagram profiles and stories with the best Instagram Web Viewer. Discover the most popular Instagram photos and videos."

26. Between August 29, 2019, and July 5, 2022, Defendant's contractor, Zafer Kaymak, created a Facebook Business Manager account named "Stalkhub." Defendant's Facebook account "Ekrem Ateş" was an administrator of the Stalkhub Facebook Business Manager account.

**D.    Background on Scraping**

27. Scraping is a form of data collection that relies on unauthorized automation for the purpose of extracting data from a website or a mobile app. Meta employs a number of measures to detect and disrupt certain types of abuse of the Instagram service, including technical anti-scraping measures to detect and disrupt unauthorized automated requests on its systems.

**E.      Defendant's Scraping Software and Instagram Clone Sites**

28.     Defendant scraped Instagram user data from Meta computers without permission in order to display it on his Instagram "clone sites," which are websites that copy and display Instagram profiles, posts, and other information. The profiles from which Defendant scraped data had not been set to private by the users and, beyond a limited number of profiles and posts, were publicly viewable only to logged-in Instagram users.

29.     To scrape Instagram, beginning no later than July 2017 and prior to June 2021, Defendant used customized automation software (the "Scraping Software") and at least 10,000 automated Instagram accounts to improperly access and collect data. The Scraping Software was programmed to mimic authorized, logged-in users of Instagram. In fact, Defendant's conduct was not undertaken in the capacity of an authorized user. Defendant instead operated a network of automated Instagram accounts for the purpose of making unauthorized automated requests for Instagram user data from Meta's computers. Defendant's Scraping Software scraped Instagram users' full name, username, user profile, posts, Stories, and pictures. The software then displayed this data on Defendant's clone sites, which included data from Meta's computers.

30.     Beginning no later than June 2021, Defendant updated the Scraping Software (the "Enhanced Scraping Software") and used at least 10,000 automated Instagram accounts to continue to improperly scrape data. The Enhanced Scraping Software operated in the same manner as the original Scraping Software, which made unauthorized automated requests for Instagram user data from Meta's computers. However, the Enhanced Scraping Software was additionally programmed to transmit the scraped data to servers that Defendant controlled and store them, rather than display scraped Instagram data directly from Meta's computers. Between January 15–17, 2022, Defendant used the Enhanced Scraping Software and over 10,400 Instagram accounts to make automated requests to Meta servers and scrape Instagram data of over 361,000 users. Between February 21–23, 2022, Defendant used the Enhanced Scraping Software and over

7

**COMPLAINT**
Case No.

10,100 Instagram accounts to make automated requests to Meta servers and scrape Instagram data of over 442,000 users.

31.     Beginning no later than July 2017 and continuing to at least February 2022, Defendant published the scraped Instagram data on the website MyStalk, which he marketed as "an online instagram viewing tool."  For example, Figure 1 below is a screenshot of the profile for user "@meta" on Instagram as of February 7, 2022, and Figure 2 is a screenshot of the profile for user "@meta" that Defendant scraped from Meta's computers and published on MyStalk as of February 7, 2022.

| Figure 1: Screenshot of Meta Profile on Instagram on February 7, 2022 | Figure 2: Screenshot of Meta Profile on MyStalk on February 7, 2022 |
|---|---|
|  |  |
| *See* Exhibit 3. | *See* Exhibit 4. |

32.     Beginning no later than August 2019 and continuing to at least February 2021, Defendant also published the scraped Instagram data on the website StalkHub.  Figure 3 below is

8

**COMPLAINT**
Case No.

a screenshot of StalkHub as captured by the Internet Archive (https://archive.org) on January 21, 2021, where Defendant advertised the ability to "find users, stories, hashtags & more on Instagram" without "even need[ing] to login." Exhibit 5.

**Figure 3: Screenshot of StalkHub as Captured by Internet Archive on January 21, 2021**



33. Defendant's clone sites allowed their users to view and search for Instagram profiles without agreeing to Instagram's Terms and without logging in to Instagram. On Defendant's clone sites, anyone could search for Instagram users by username or hashtag to view their Instagram profiles, pictures, videos, and Stories. And whereas users on Instagram can change their privacy settings at any time to control who can see their Instagram account or posts, no such option existed on Defendant's clone sites.

34. Defendant hired at least two other individuals, Kutsal Murat Polat and Zafer Kaymak, to help develop his clone sites, and Defendant generated revenue by using an ad publishing service hosted by Google to display ads to the users of his clone sites. *See* Exhibits 6 & 7.

35. In addition, Defendant's clone sites promoted "stalking people" and allowed users to anonymously view Instagram Stories with no notification to the Instagram user who posted them. As shown in the screenshot of MyStalk on February 8, 2022 (Figure 4 below), Defendant advertised the option to "Login Anonymously" and maintain a "stalk list," wherein MyStalk users can "start stalking people without they notice [*sic*] you." Exhibit 8.

**Figure 4: Screenshot of MyStalk on February 8, 2022**

### F. Meta's Past Enforcement Actions Against Defendant

36. Since at least February 2021, Meta has taken different enforcement actions against Defendant for violating Instagram's Terms and disabled thousands of automated Instagram accounts associated with Defendant.

37. On or about February 24, 2021, Meta sent Defendant a cease and desist letter, notifying Defendant of his violations of Instagram's Terms, demanding that he stop these violations, and revoking his access to Facebook and Instagram. Meta also requested Defendant delete all data scraped from Facebook and Instagram. Exhibit 9.

38. On or about February 26, 2021, Defendant responded to the cease and desist letter. In his response, Defendant admitted that he had owned and operated MyStalk and StalkHub; admitted that he hired two "freelancers," Kutsal Murat Polat and Zafer Kaymak, to work on his clone sites; identified 10,000 Instagram accounts that he created, developed, maintained, or controlled; stated that he stopped all activity on StalkHub; and claimed that he had transferred

ownership of MyStalk to another individual. Exhibit 10. In a response from Defendant on or about March 15, 2021, Defendant admitted that he earned revenue from ads displayed on his clone sites, and again claimed that he had transferred MyStalk to another individual. *Id.* When asked on five separate occasions to provide information about the individual to whom Defendant claimed to have transferred MyStalk, Defendant refused to do so. *See id.* Notwithstanding Defendant's claim that he no longer owned MyStalk, and Meta's technical enforcement actions, cease and desist letter, and technical anti-scraping measures, Defendant continues to scrape Instagram user data to display on MyStalk as of July 5, 2022.

**G.     Defendant Unjustly Enriched Himself and Harmed Meta**

39.     Defendant's violations of Instagram's Terms and Meta's Commercial Terms have harmed Meta.

40.     Defendant's unauthorized use of Meta's computers, computer system, and computer network has damaged Meta, including but not limited to the time and money spent investigating and mitigating Defendant's unlawful conduct, in an amount to be determined at trial, and in excess of $75,000.

41.     Since at least July 2017, Defendant has unjustly enriched himself at Meta's expense in an amount to be determined at trial. Meta is entitled to an accounting by Defendant and a disgorgement of all unlawful profits gained from his conduct.

**FIRST CAUSE OF ACTION**

(Breach of Contract)

42.     Meta realleges and incorporates all preceding paragraphs here.

43.     Since at least December 2012, Defendant created and used multiple Instagram accounts and agreed to Instagram's Terms. Defendant agreed to Instagram's Terms no later than December 28, 2012, and explicitly agreed to Instagram's Terms as recently as February 27, 2021.

11

**COMPLAINT**
Case No.

In addition, since at least July 2017, Defendant has used thousands of Instagram accounts to scrape Instagram.

44. Since at least May 2017, Defendant created, managed, and used multiple Facebook Pages and agreed to Meta's Commercial Terms. Defendant agreed to Meta's Commercial Terms no later than May 18, 2017, and explicitly agreed to Meta's Commercial Terms as recently as May 19, 2019.

45. Instagram's Terms and Meta's Commercial Terms each constitute an agreement between Meta and Defendant.

46. Meta has performed all conditions, covenants, and promises required of it in accordance with its agreements with Defendant.

47. Defendant breached Instagram's Terms and Meta's Commercial Terms by using Instagram after Meta previously disabled his Instagram accounts for violation of Instagram's Terms and by using unauthorized automated means to access Instagram and collect data from Meta's computers without permission, including after Meta revoked Defendant's access to its platforms.

48. Defendant's breaches of Instagram's Terms and Meta's Commercial Terms have caused Meta to incur damages in an amount to be determined at trial, and in excess of $75,000.

## SECOND CAUSE OF ACTION

(California Penal Code § 502)

49. Meta realleges and incorporates all preceding paragraphs here.

50. Defendant's access and use of Meta's computers, computer systems, and/or computer network was without permission because Defendant accessed Meta's computer network after Meta disabled his Instagram accounts and sent correspondence to Defendant revoking his access. On or about February 24, 2021, Meta sent Defendant a cease and desist letter revoking Defendant's permission to access Facebook and Instagram. Meta also took technical measures to

revoke Defendant's access that barred Defendant's accounts and ability to access Instagram beginning no later than February 24, 2021. Nevertheless, Defendant subsequently accessed Meta's protected computers when he created and used new accounts to continue scraping data from Instagram, without Meta's permission.

51. Beginning no later than January 2022, Defendant, without permission, knowingly accessed and otherwise used Meta's computers, computer system, and/or computer network in order to (a) devise or execute any scheme or artifice to defraud and deceive, and (b) wrongfully obtain money, property, or data, in violation of California Penal Code § 502(c)(1).

52. Beginning no later than January 2022, Defendant, without permission, knowingly accessed and took, copied, and made use of data from Meta's computers, computer system, and/or computer network in violation of California Penal Code § 502(c)(2).

53. Beginning no later than January 2022, Defendant knowingly and without permission used or caused to be used Meta's computer services in violation of California Penal Code § 502(c)(3).

54. Beginning no later than January 2022, Defendant knowingly and without permission accessed and caused to be accessed Meta's computers, computer systems, and/or computer network in violation of California Penal Code § 502(c)(7). Defendant accessed Meta's computer network after Meta disabled his Instagram accounts and sent correspondence to Defendant revoking his access to Instagram.

55. Because Meta suffered damages and losses as a result of Defendant's actions and continues to suffer damages and losses as a result of Defendant's actions, Meta is entitled to compensatory damages in an amount to be determined at trial, attorney fees, any other amount of damages proven at trial, and injunctive relief under California Penal Code § 502(e)(1) and (2).

## THIRD CAUSE OF ACTION

(Unjust Enrichment)

56. Meta realleges and incorporates all preceding paragraphs here.

57. Defendant's acts as alleged herein constitute unjust enrichment of Defendant at Meta's expense.

58. Defendant accessed and used, without authorization or permission, Meta's computers, computer system, and computer network, all of which belong to Meta.

59. Defendant used Meta's service, platform, and computer network to, among other things, scrape data from Instagram.

60. Defendant received a benefit by profiting from his unauthorized use of Meta's computers, computer system, and computer network. But for Defendant's wrongful, unauthorized, and intentional use of Instagram, he would not have obtained such profits.

61. Defendant's retention of the profits derived from his unauthorized use of Meta's computers, computer system, and computer network would be unjust.

62. Defendant's unauthorized use of Meta's computers, computer system, and computer network has damaged Meta, including but not limited to the time and money spent investigating and mitigating Defendant's unlawful conduct.

63. Meta seeks an accounting and disgorgement of Defendant's ill-gotten profits in an amount to be determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment against Defendant as follows:

1. That the Court enter judgment against Defendant that Defendant has:

   a. Breached his contracts with Meta in violation of California law;

      b. Violated the California Comprehensive Computer Data Access and Fraud Act, in violation of California Penal Code § 502; and

      c. Been unjustly enriched at the expense of Meta in violation of California law.

2. That the Court enter a permanent injunction enjoining and restraining Defendant and his agents, servants, employees, successors, and assigns, and all other persons acting in concert with or conspiracy with him or who are affiliated with him from:

      a. Accessing or attempting to access Meta's platforms, including Facebook and Instagram, and Meta's computer systems;

      b. Developing, offering, and marketing software, computer code, or other products or services intended to automate the collection of data from Meta's platforms or circumvent Meta's enforcement measures;

      c. Engaging in any activity, or facilitating others to do the same, that violates Instagram's Terms, Meta's Commercial Terms, and related policies; and

      d. Distributing data of any kind obtained or purportedly obtained from Meta or its products, including Facebook and Instagram.

3. That the Court enter an injunction requiring Defendant to identify the location of any and all data obtained from Meta or its products, including Facebook and Instagram, delete any and all such data, and identify any and all individuals and entities with whom Defendant shared such data.

4. That Plaintiff be awarded damages, including, but not limited to, compensatory, statutory, and punitive damages, as permitted by law and in such amounts to be proven at trial.

5. That Plaintiff be awarded its reasonable costs, including reasonable attorneys' fees.

6. That Plaintiff be awarded pre- and post-judgment interest as allowed by law.

7. That the Court grant all such other and further relief as the Court may deem just and proper.

**PLAINTIFF RESPECTFULLY DEMANDS A JURY TRIAL.**

DATED: July 5, 2022							Respectfully submitted,

									DAVIS WRIGHT TREMAINE LLP


									By:  */s/Bonnie E. MacNaughton*
									        Bonnie E. MacNaughton

									Attorneys for Plaintiff
									META PLATFORMS INC.

									Platform Enforcement and Litigation
									Meta Platforms, Inc.
									  Jessica Romero
									  Stacy Chen
									  Jimmy Doan