1
2
3
4
5
6            UNITED STATES DISTRICT COURT
7          NORTHERN DISTRICT OF CALIFORNIA
8

| | |
|---|---|
| 9   META PLATFORMS, INC., | Case No.  22-cv-03918-TSH |
| 10              Plaintiff, | |
| 11        v. | **REQUEST FOR REASSIGNMENT WITH REPORT & RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT** |
| 12   EKREM ATES, | |
| 13              Defendant. | Re: Dkt. No. 18 |

14
15                    **I.    INTRODUCTION**

16        Meta Platforms, Inc. alleges Ekrem Ates used unauthorized automation software to

17 improperly access and collect—or "scrape"—the profiles of over 350,000 Instagram users, then

18 published the scraped data on his own websites, allowing visitors to view and search for Instagram

19 profiles without the Instagram users noticing.  Meta brings this action to stop Ates's violations of

20 Instagram's Terms of Use and the Meta Commercial Terms, as well as for damages and

21 disgorgement for breach of contract and unjust enrichment.  Pending before the Court is Meta's

22 Motion for Default Judgment.  ECF No 18.  Ates has neither opposed the motion nor appeared in

23 this case.  The undersigned finds this matter suitable for disposition without oral argument and

24 **VACATES** the May 4, 2023 hearing.  Civ. L.R. 7-1(b).  As not all parties have consented to

25 magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c), the undersigned requests this case be

26 reassigned to a district judge for disposition.  For the reasons stated below, the undersigned

27 **RECOMMENDS** the District Court **GRANT** the motion.

28

United States District Court
Northern District of California

## II.    BACKGROUND

**A.    Parties**

Meta is a Delaware corporation with its principal place of business in Menlo Park, San Mateo County, California.  Compl. ¶ 3, ECF No. 1.  Meta operates Facebook, a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices.  *Id.* ¶ 12.  Meta also operates Instagram, a photo and video sharing service, website, and mobile application.  *Id.* ¶ 13.

Ates is an individual who resides in Istanbul, Turkey.  *Id.* ¶ 4.

**B.    Background on Instagram**

Instagram users can post photos and videos to their profiles, and can also view, comment on, and like posts shared by others on Instagram.  *Id.* ¶ 13.  To access Instagram and view certain user profiles, Meta requires that each user create an Instagram account.  *Id.* ¶ 17.  To create an account, each user must register with a unique username and password.  *Id.*  Registered users can post photos or videos to their profiles, which other Instagram users can view and choose to "like" or "comment" on.  *Id.* ¶ 14.  Instagram users can also tag their posts with hashtags—words or phrases preceded by a number or a hash sign (#)—that other users can then search to find content related to various topics.  *Id.* ¶ 15.  Instagram users can also post Stories, which are photos or videos that users can make visible for 24 hours after they are posted.  *Id.* ¶ 16.  Only users who are logged in to Instagram can view Stories, and users can view a list of every user who has viewed their Story for up to 48 hours after a Story is posted.  *Id.*  Instagram's privacy settings provide users with control over how much information is viewable publicly to other Instagram users or to the users' approved followers.  *Id.* ¶ 14.  Users can change their privacy settings at any time.  *Id.*

**C.    Instagram's Terms of Use**

Everyone who creates an Instagram account agrees to Instagram's Terms of Use and other rules that govern access to and use of Instagram.  *Id.* ¶ 17.  Since at least April 2018, Instagram's Terms prohibit users from: (1) "do[ing] anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose"; (2) "creating accounts or collecting information in an automated way without [] express authorization"; or (3) using Instagram if Meta "previously disabled your

1  account for violation of law or any of [Instagram's] policies." *Id.* ¶¶ 17-18.

2  **D.      Ates's Violations of Instagram's Terms of Use**

3          Scraping is a form of data collection that relies on unauthorized automation for the purpose

4  of extracting data from a website or a mobile app. *Id.* ¶ 27.  Meta employs a number of measures

5  to detect and disrupt certain types of abuse of the Instagram service, including technical anti-

6  scraping measures to detect and disrupt unauthorized automated requests on its systems. *Id.*

7          Ates scraped Instagram user data from Meta computers without permission to display it on

8  his Instagram "clone sites," which are websites that display data—profiles, posts, and other

9  information—scraped from Instagram. *Id.* ¶ 28.  Between July 2017 and June 2021, Ates used the

10  customized automation software (the "Scraping Software") and at least 10,000 automated

11  Instagram accounts to improperly access and collect data. *Id.* ¶ 29.  The Scraping Software was

12  programmed to mimic authorized, logged-in Instagram users for the purpose of making

13  unauthorized automated requests for Instagram user data from Meta's computers. *Id.*  The

14  Scraping Software would scrape an Instagram user's full name, username, user profile, posts,

15  Stories, and pictures, and then display this data on Ates's clone sites. *Id.*

16          Beginning no later than June 2021, Ates updated the Scraping Software (the "Enhanced

17  Scraping Software") and used at least 10,000 Instagram accounts to continue to improperly scrape

18  data. *Id.* ¶ 30.  The Enhanced Scraping Software was additionally programmed to transmit and

19  store the scraped data on servers that Ates controlled, rather than displaying the scraped Instagram

20  data directly from Meta's computers. *Id.*  Between January 15-17, 2022, Ates used the Enhanced

21  Scraping Software and over 10,400 Instagram accounts to scrape data of over 361,000 Instagram

22  users. *Id.*  Between February 21-23, 2022, Ates used the Enhanced Scraping Software and over

23  10,100 Instagram accounts to scrape Instagram data of over 442,000 users. *Id.*

24          Ates published the scraped Instagram data on his clone sites mystalk.com ("MyStalk") and

25  stalkhub.com ("StalkHub"). *Id.* ¶¶ 5-6, 31-32.  Ates's clone sites allowed users to view and search

26  for Instagram profiles without agreeing to Instagram's Terms and without logging in to Instagram.

27  *Id.* ¶ 33.  Ates's clone sites promoted "stalking people" and allowed visitors to anonymously view

28  Instagram Stories with no notification to the Instagram users who posted them. *Id.*  Ates

1   advertised the option to "Login Anonymously" and maintain a "stalk list," wherein MyStalk users

2   can "start stalking people without they notice [sic] you." *Id.* ¶ 35.

3   **E.    Meta's Enforcement Actions Against Ates**

4           Since at least February 2021, Meta has taken different enforcement actions against Ates for

5   violating Instagram's Terms of Use, including disabling thousands of automated Instagram

6   accounts associated with Ates. *Id.* ¶ 36. On February 24, 2021, Meta sent a cease-and-desist

7   letter, notifying Ates that his conduct violated Instagram's Terms, demanding that he stop

8   violating Instagram's Terms, and revoking his access to Instagram. *Id.* ¶ 37 & Ex. 9. Ates

9   responded on February 26, admitting to owning and operating MyStalk and StalkHub and hiring

10  two "freelancers" to work on the clone sites, identified 10,000 Instagram accounts that he created

11  and used to scrape Instagram. *Id.* ¶ 38 & Ex. 10. Ates also represented that he had stopped all

12  activity on StalkHub and claimed that he had transferred ownership of the MyStalk website to

13  another individual. *Id.*

14  **F.    Procedural Background**

15          On July 5, 2022, Meta filed the present complaint alleging three causes of action against

16  Ates: (1) breach of contract, (2) violation of California's Computer Data Access and Fraud Act

17  ("CDAFA"), Cal. Penal Code § 502; and (3) unjust enrichment. Because Ates resides in Turkey,

18  Meta initiated service through the Central Authority of Turkey, pursuant to the Hague Convention

19  on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters,

20  Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. On November 21, 2022, Meta effected service

21  on Ates. ECF No. 12. After he failed to respond, Meta requested entry of default. ECF No. 13.

22  On February 7, 2023, the Clerk of Court entered default against Ates. ECF No. 14. Meta filed the

23  present motion on March 15, seeking a permanent injunction against Ates.

24                              **III.    LEGAL STANDARD**

25          Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant,

26  to enter default judgment in a case. "The district court's decision whether to enter default

27  judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

28          At the default judgment stage, the factual allegations of the complaint, except those

United States District Court
Northern District of California

4

1   concerning damages, "together with other competent evidence submitted" are deemed admitted by

2   the non-responding parties.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995,

3   1000 (N.D. Cal. 2001); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)

4   ("With respect to the determination of liability and the default judgment itself, the general rule is

5   that well-pled allegations in the complaint regarding liability are deemed true.").  "However, a

6   defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."

7   *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation and quotation omitted)).

8   Therefore, "necessary facts not contained in the pleadings, and claims which are legally

9   insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261,

10  1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord*

11  *DIRECTV*, 503 F.3d at 854.  Further, the scope of relief is limited by Federal Rule of Civil

12  Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in

13  amount, what is demanded in the pleadings."

14          In determining whether default judgment is appropriate, the Ninth Circuit has enumerated

15  the following factors for courts to consider:

16              (1) the possibility of prejudice to the plaintiff, (2) the merits of
                plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
17              the sum of money at stake in the action; (5) the possibility of a dispute
                concerning material facts; (6) whether the default was due to
18              excusable neglect, and (7) the strong policy underlying the Federal
                Rules of Civil Procedure favoring decisions on the merits.
19

20  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

21                                    **IV.   DISCUSSION**

22  **A.      Jurisdiction and Service of Process**

23          In considering whether to enter default judgment, a district court must first determine

24  whether it has jurisdiction over the subject matter and the parties to the case.  *In re Tuli*, 172 F.3d

25  707, 712 (9th Cir. 1999).  "[T]he district court is not restricted to the face of the pleadings, but

26  may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning

27  the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988)

28  (considering subject matter jurisdiction on a 12(b)(1) motion).

United States District Court
Northern District of California

5

1    **1.    Subject Matter Jurisdiction**

2        Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction.

3    *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A federal court may

4    dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction.  *Fiedler v.*

5    *Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court

6    determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

7    action.").

8        Meta's allegations support diversity jurisdiction under 28 U.S.C. § 1332 because the case

9    is between "citizens of a State and citizens or subjects of a foreign state" and the amount in

10   controversy exceeds $75,000.  Compl. ¶ 7.

11   **2.    Personal Jurisdiction**

12       To enter default judgment, the Court must have a basis for the exercise of personal

13   jurisdiction over the defendants in default.  *In re Tuli*, 172 F.3d at 712.  "Without a proper basis

14   for [personal] jurisdiction, or in the absence of proper service of process, the district court has no

15   power to render any judgment against the defendant's person or property unless the defendant has

16   consented to jurisdiction or waived the lack of process."  *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39

17   (9th Cir. 2007).  Traditional bases for conferring a court with personal jurisdiction include a

18   defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a

19   defendant's citizenship or domicile in the forum state.  *J. McIntyre Mach., Ltd. v. Nicastro*, 564

20   U.S. 873, 880 (2011).  Absent one of the traditional bases for jurisdiction, the Due Process Clause

21   requires that the defendant have "certain minimum contacts with the forum 'such that the

22   maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

23   *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316

24   (1945) (citations and quotation marks omitted).  The party seeking to invoke jurisdiction has the

25   burden of establishing that jurisdiction is proper.  *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389,

26   1392 (9th Cir. 1984).  "[M]ere 'bare bones' assertions of minimum contacts with the forum or

27   legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading

28   burden."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

United States District Court
Northern District of California

United States District Court
Northern District of California

1

### a.    Minimum Contacts

2

The undersigned finds the Court has personal jurisdiction over Ates under a minimum

3

contacts analysis.  For claims sounding in tort, like Meta's CDAFA claim, the minimum contacts

4

test is satisfied when: (i) the defendant "purposefully direct[s] his activities" at the forum state; (ii)

5

the claim "must be one which arises out of or relates to the defendant's forum-related activities;"

6

and (iii) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must

7

be reasonable."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)

8

(citation omitted); *Meta Platforms, Inc. v. Soc. Data Trading Ltd.*, 2022 WL 18806267, at *2

9

(N.D. Cal. Nov. 15, 2022), *report and recommendation adopted*, 2022 WL 18806265 (N.D. Cal.

10

Dec. 8, 2022) (analyzing personal jurisdiction against resident of Hong Kong under a purposeful

11

direction analysis).

12

First, Ates purposefully directed his activities at the forum state.  Ates scraped data from

13

the profiles of over 350,000 Instagram users, including over 15,000 users located in California

14

between January 15-17, 2022, and of over 21,000 users located in California between February

15

21-23, 2022.  *Id.* ¶¶ 1, 9.  This was an "intentional act expressly aimed at the forum state and

16

causing harm that he know was likely to be suffered in the forum state.  *See Meta Platforms, Inc.*,

17

2022 WL 18806267, at *2 (finding purposeful direction satisfied where defendant scraped the

18

Instagram accounts of approximately 250,000 California users) (citing *Morrill v. Scott Fin. Corp.*,

19

873 F.3d 1136, 1142 (9th Cir. 2017)).  As a result, Meta had to expend resources to detect and

20

remediate Ates's activities.  *Id.* ¶¶ 36, 40.  Meta deployed those resources in California where it is

21

headquartered.  *Id.* ¶ 9.

22

Second, Meta's claims relate to Ates's forum-related activities as they are based on his

23

unauthorized scraping of Instagram accounts, including accounts within California.  *See Meta*

24

*Platforms, Inc.*, 2022 WL 18806267, at *2.

25

Third, Ates has the burden of proof to demonstrate that the exercise of jurisdiction would

26

be unreasonable.  *See Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).  And "by failing to

27

participate in this litigation," Ates has "waived his opportunity" to satisfy that burden.  *Yelp Inc. v.*

28

*Catron*, 70 F. Supp. 3d 1082, 1094 (N.D. Cal. 2014).

7

### b. Service of Process

Personal jurisdiction also requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Federal Rule of Civil Procedure 4]." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

Meta served Ates under the Hague Convention. *See* Fed. R. Civ. P. 4(f)(1); *see generally Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980-81 (N.D. Cal. 2020) (discussing service under the Convention). On November 21, 2022, Meta served Ates with the Complaint, Summons, and other case documents through the Central Authority of Turkey. ECF No. 12.

## B. *Eitel* Factors

Applying the seven *Eitel* factors, the undersigned finds default judgment is warranted in favor of Plaintiff.

### 1. The Possibility of Prejudice

The first factor the Court considers is the possibility of prejudice if a default judgment is not entered. *Eitel*, 782 F.2d at 1471-72. This factor weighs in favor of default judgment "when a defendant has failed to appear or defend against a suit, and the plaintiffs could not otherwise seek relief." *Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citations omitted); *IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010) (prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy). Because Ates has not appeared in this action, Meta would be prejudiced absent a default judgment because it would be left without a remedy.

### 2. Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of the substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. "These two factors are often analyzed together and require courts to consider whether a plaintiff has 'state[d] a claim on which [it] may

United States District Court
Northern District of California

recover.'" *Vietnam Reform Party*, 416 F. Supp. 3d at 962 (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)).  "Of all the *Eitel* factors, courts often consider the second and third factors to be 'the most important.'" *Id.* (quoting *Sanrio, Inc. v. Jay Yoon*, 2012 WL 610451, at *4 (N.D. Cal. Feb. 24, 2012)).

### a.    Breach of Contract

Under California law, the "cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004).

When Ates created Instagram accounts, he agreed to Instagram's terms of service.  *See* Compl. ¶ 8; *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164-67 (N.D. Cal. 2016) (Meta's user-registration process created binding contract on user); *Meta Platforms, Inc.*, 2022 WL 18806267, at *3 (same).  Instagram's terms prohibit users from "creating accounts or collecting information in an automated way."  Compl. ¶ 18.  Ates breached this provision by using "thousands of automated Instagram accounts" to scrape data from Meta computers and from hundreds of thousands of legitimate Instagram accounts.  *Id.* ¶¶ 1, 28.  Instagram's terms also prohibit users from using Instagram if Meta "previously disabled your account" for violating Instagram's policies.  *Id.* ¶ 18.  Ates breached this provision, too.  Meta "disabled thousands of automated Instagram accounts associated with [Ates]."  *Id.* ¶ 28.  Meta has been damaged by Ates's breach as it has had to spend time and money to investigate and mitigate his conduct.  *Id.* ¶¶ 40, 48; *see Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277, at *7 (N.D. Cal. Aug. 28, 2020), *report and recommendation adopted*, 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020) (Meta sufficiently pled damages element of contract claim based on allegation that it incurred investigation and remediation costs as a result of breach); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 2021 WL 5707741, at *5 (N.D. Cal. Oct. 21, 2021), *report and recommendation adopted*, 2021 WL 5707740 (N.D. Cal. Nov. 16, 2021) (Meta sufficiently pled damages element of contract claim by alleging that it had to "expend time and resources to investigate"); *Meta Platforms, Inc.*, 2022 WL 18806267, at *3 (same).

9

United States District Court
Northern District of California

1    Accordingly, the undersigned finds Meta has established its breach of contract claim.

2        **b.    CDAFA Claim**

3    California Penal Code section 502 prohibits the unauthorized access and use of any data

4    from a computer, computer system, or computer network.  Cal. Penal Code § 502; *Sunbelt*

5    *Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014) ("Section 502 is an anti-

6    hacking statute intended to prohibit the unauthorized use of any computer system for improper or

7    illegitimate purpose.").  Meta can enforce the CDAFA through this civil action.  *See* Cal. Penal

8    Code § 502(e)(1).

9    The Ninth Circuit has held that continued use of Meta's services after receipt of a cease-

10   and-desist letter violates section 502.  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058,

11   1069 (9th Cir. 2016) ("[W]hen Facebook sent the cease and desist letter, Power, as it conceded,

12   knew that it no longer had permission to access Facebook's computers at all.  Power, therefore,

13   knowingly accessed and without permission took, copied, and made use of Facebook's data.").

14   Similarly, Ates's access to and use of Meta's computers was without permission.  Compl. ¶ 50.

15   On February 24, 2021, Meta disabled Ates's Instagram accounts and sent a cease-and-desist letter

16   revoking his permission to access Facebook and Instagram.  *Id.*  Ates acknowledged receipt of the

17   cease-and-desist letter but continued to access Meta's protected computers when he created and

18   used new accounts to scrape data from Instagram.  *Id.*  Accordingly, the undersigned finds Meta

19   has established its CDAFA claim.  *See Meta Platforms, Inc.*, 2022 WL 18806267, at *4 (finding

20   defendant violated CDAFA where it "scraped Instagram profiles from restricted Meta computers,

21   even after Meta revoked SDTL's Instagram access") (internal quotations and citation omitted).

22       **c.    Unjust Enrichment**

23   A claim for unjust enrichment requires a plaintiff to plead two elements: "receipt of a

24   benefit and unjust retention of the benefit at the expense of another."  *Lectrodryer v. SeoulBank*,

25   77 Cal. App. 4th 723, 726 (2000).  Here, Ates profited from his unauthorized use of Meta's

26   computers and scraping of Instagram, which he monetized by running ads on the clone sites.

27   Compl. ¶¶ 58–63.  As a result, Meta had to expend significant resources to investigate and

28   mitigate his illegal conduct.  *Id.* ¶ 62.  Accordingly, the undersigned finds Meta has established its

unjust enrichment claim. *See Associated Third Party Adm'rs, Inc. v. Truvillion*, 2007 WL 9728933, at *3 (N.D. Cal. Apr. 17, 2007), *report and recommendation adopted*, 2007 WL 9728934 (N.D. Cal. Aug. 29, 2007) (finding unjust enrichment was shown where fraud or wrongdoing was alleged); *Meta Platforms, Inc.*, 2022 WL 18806267, at *3 ("SDTL profited from its unauthorized scraping by selling the scraped Instagram data online. . . .  If SDTL were allowed to retain its profits, SDTL would be unjustly enriched at Meta's expense.").

### 3.    The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Dr. JKL Ltd., v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) (citation and quotation marks omitted).  When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc.*, 70 F. Supp. 3d at 1100.

Here, Meta seeks injunctive relief only.  Accordingly, this factor favors granting default judgment. *Sluchevsky*, 2020 WL 5823277, at *8 ("Where a plaintiff seeks only injunctive relief, the fourth Eitel factor weighs in favor of granting the plaintiff's motion.") (citing *MERSCORP Holdings, Inc. v. MERS, Inc.*, 2017 WL 1709351, at *3 (N.D. Cal. May 3, 2017)).

### 4.    The Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case.  *Eitel*, 782 F.2d at 1471-72.  However, upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DIRECTV, Inc.*, 503 F.3d at 851 (citing Fed. R. Civ. P. 55(a)).  Moreover, as outlined above, Meta has provided the Court with well-pleaded allegations supporting its claims.  Accordingly, this factor weighs in favor of default judgment.

### 5.    Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether the defendant's failure to respond to the complaint

United States District Court
Northern District of California

was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, Meta provided adequate notice of this action, *see* ECF No. 12, yet Ates made no appearance and failed to respond to the present motion. *See S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) ("A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence.") (simplified). Further, there is nothing in the record suggesting this failure is based on excusable neglect. *See Shanghai Automation*, 194 F. Supp. 2d at 1005 (default after proper service was not excusable neglect). Thus, this factor supports default judgment.

### 6. Policy Favoring Deciding a Case on its Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.* "The existence of Federal Rule of Civil Procedure 55(b), however, shows that this policy is not dispositive." *McMillan Data Commc'ns, Inc. v. AmeriCom Automation Servs., Inc.*, 2015 WL 4380965, at *11 (N.D. Cal. July 16, 2015) (citing *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Further, "deciding the case on the merits is impossible where a party refuses to participate." *Vietnam Reform Party*, 416 F. Supp. 3d at 970. Thus, because Ekrem Ates made no effort to respond to communication attempts by Meta Platforms, Inc. and in no way participated in the proceedings, "[t]his factor thus weighs against, but does not preclude, entry of default judgment." *Id.*

### 7. Summary of the *Eitel* Factors

In sum, the majority of the *Eitel* factors weigh in favor of granting default judgment. Accordingly, the undersigned **RECOMMENDS** the District Court **GRANT** the motion and enter default judgment against Ekrem Ates.

## C. Relief Sought

The Court next turns to the relief Meta seeks. Once liability is established, the plaintiff must then establish that the requested relief is appropriate. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). A "default judgment must not differ in kind from, or exceed in amount,

United States District Court
Northern District of California

1    what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

2          Meta seeks only injunctive relief, which is an authorized remedy under the CDAFA.  Cal.

3    Penal Code § 502(e)(1).  To obtain permanent injunctive relief, "[a] plaintiff must demonstrate: (1)

4    that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

5    damages, are inadequate to compensate for that injury; (3) that, considering the balance of

6    hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

7    public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange,*

8    *L.L.C.*, 547 U.S. 388, 391 (2006).  The Court has discretion to grant or deny permanent injunctive

9    relief.  *Id.*  Courts consider these factors in turn to determine if, on balance, they support issuing a

10   permanent injunction.

11         **1.    Irreparable Injury**

12         As to the first factor, "[n]umerous courts have found that unauthorized access of computers

13   and the acquisition of data . . . constitute[s] irreparable harm."  *Facebook, Inc. v. Power Ventures,*

14   *Inc.*, 252 F. Supp. 3d 767, 782 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019).  And

15   here, Ates's "scraping of [] data and unauthorized use of Plaintiff's platform" gives rise to

16   irreparable injury.  *Sluchevsky*, 2020 WL 5823277, at *9 (finding "unauthorized acquisition" of

17   data gives rise to irreparable harm); Compl. ¶¶ 39-40.  Meta has suffered—and continues to

18   suffer—irreparable harm to its reputation and goodwill as a result of Ates's unauthorized access,

19   illegal possession, and unauthorized use of Meta's data that monetary damages cannot rectify.

20   *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of

21   threatened loss of prospective customers or goodwill certainly supports a finding of the possibility

22   of irreparable harm."); *Sluchevsky*, 2020 WL 5823277, at *9.

23         **2.    Inadequacy of Money Damages**

24         As to the second factor, "not only has [Meta] suffered irreparable harm, it is very likely

25   that in the absence of a permanent injunction, [Meta] will suffer irreparable harm again in the

26   future."  *Power Ventures*, 252 F. Supp. 3d at 768.  Indeed, Ates used automation software and at

27   least 20,000 automated Instagram users to scrape data from the profiles of over 350,000 Instagram

28   users.  Compl. ¶¶ 1, 22, 29.  Between January 15-17, 2022 alone, Ates used the Scraping Software

and over 10,400 Instagram accounts to scrape Instagram data of over 361,000 users. *Id.* ¶ 30.

Ates then posted the scraped data on clone sites, which allowed users to view and search for

Instagram profiles without agreeing to Instagram's Terms and without logging in to Instagram. *Id.*

¶ 33.  Ates's illicit conduct continued despite acknowledging receipt of Meta's cease-and-desist

letter. *Id.* ¶¶ 37-38.  Absent an injunction, there is nothing to prevent Ates from further attempts

to scrape and monetize Meta's data.  Monetary damages, therefore, are inadequate to compensate

Meta's injury. *See Power Ventures*, 252 F. Supp. 3d at 783 (money damages inadequate where

defendants "still possess . . . data illegally acquired from Facebook"); *Sluchevsky*, 2020 WL

5823277, at \*9 (second factor weighs in favor of granting a permanent injunction where

"defendants retain the software, tools or means at issue to continue their harmful behavior").

> ### 3.    Balance of Hardships

As to the third factor, the balance of hardships also tips in Meta's favor.  Enjoining Ates's

violation of the Instagram Terms of Use presents little to no hardship on him. *Vector Media S.,*

*LLC v. Starlin Tours of Hollywood, Inc.*, 2021 WL 4913488, at \*7 (C.D. Cal. Aug. 4, 2021)

(rejecting contention that "merely requiring [defendant] to perform under the parties' contract is

unduly burdensome" and finding that "[t]he balance of hardships therefore tips in favor of

[plaintiff]"); *Sluchevsky*, 2020 WL 5823277, at \*9 ("[A] permanent injunction would only require

Defendants to comply with the law.").  On the other hand, Ates forced Meta to incur costs to

investigate and mitigate his repeated violations of the Instagram Terms of Use.  Ates's

unauthorized possession and unauthorized distribution of data belonging to over 350,000

Instagram users warrants an injunction.

> ### 4.    Public Interest

Finally, the public interest would be served by an injunction because it "has an interest in

ensuring that computers are not accessed without authorization." *Power Ventures, Inc.*, 252 F.

Supp. 3d at 785.  Indeed, courts have found the public has a significant interest in enjoining a

suspected abuser of Meta's platform from accessing Meta's products and distributing or

monetizing any data obtained from Meta's products. *Stackla, Inc. v. Facebook, Inc.*, 2019 WL

4738288, at \*6 (N.D. Cal. Sept. 27, 2019) ("[Meta]'s ability to decisively police the integrity of its

United States District Court
Northern District of California

platform is without question a pressing public interest.  In particular, the public has a strong interest in the integrity of [Meta]'s platforms, [Meta]'s policing of those platforms for abuses, and [Meta]'s protection of its users' privacy."); *Sluchevsky*, 2020 WL 5823277, at *9 (same).  As such, the undersigned finds that a permanent injunction would advance a cognizable public interest, and that this factor weighs in support of enjoining Ates's behavior.

### 5. Summary

For the reasons discussed above, the undersigned finds that each of the factors supports granting a permanent injunction in this case.  The undersigned therefore **RECOMMENDS** the Court grant Meta's request for permanent injunctive relief against Ates as detailed below.

## V.   CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** the District Court **GRANT** Plaintiff Meta Platforms, Inc.'s Motion for Default Judgment and enter judgment against Defendant Ekrem Ates on Meta's First Cause of Action for breach of contract, Second Cause of Action for violation of California Penal Code section 502, and Third Cause of Action for Unjust Enrichment.  The undersigned **FURTHER RECOMMENDS** the Court **GRANT** Meta's request for a permanent injunction as follows:

Defendant Ates, and any of his servants, employees, agents, successors and assigns, and all others in active concert or participation with him or who are affiliated with him, are PERMANENTLY ENJOINED and RESTRAINED from:

(a)   Accessing or attempting to access Meta's platforms, including Facebook and Instagram, and Meta's computer systems;

(b)   Developing, offering, and marketing software, computer code, or other products or services intended to automate the collection of data from Meta's platforms or circumvent Meta's enforcement measures;

(c)   Engaging in any activity, or facilitating others to do the same, that violates Instagram's Terms, Meta's Commercial Terms, and related policies; and

(d)   Distributing data of any kind obtained or purportedly obtained from Meta or its products, including Facebook and Instagram.

United States District Court
Northern District of California

1        Meta shall serve a copy of this Report and Recommendation upon Defendant and file proof

2   of service thereafter.  Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure

3   72(b)(2), a party may serve and file any objections within 14 days after being served.  Failure to

4   file objections within the specified time may waive the right to appeal the district court's order.

5   **IT IS SO RECOMMENDED.**

6

7   Dated: May 1, 2023

8

9   THOMAS S. HIXSON
   United States Magistrate Judge

United States District Court
Northern District of California